### JONAH DAVIS v. THE STATE.

No. 3942. Decided February 2, 1916.

**Theft of Hogs—Sufficiency of the Evidence—Rule Stated—Asportation.**

It is not necessary that the property be removed any distance from the place of taking; it is sufficient that it has been in possession of the thief, and where the evidence showed the recent change of marks on the alleged stolen hogs and connected the defendant therewith, the evidence was sufficient to sustain a conviction. Following Coward v. State, 24 Texas Crim. App., 590.

Appeal from the District Court of Polk. Tried below before the Hon. L. B. Hightower.

Appeal from a conviction of theft of hogs; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*S. H. German,* for appellant.—On question of insufficiency of the evidence: Hardeman v. State, 12 Texas Crim. App., 207; House v. State, 15 id., 522; Schnaubert v. State, 12 S. W. Rep., 733; Thompson v. State, 17 S. W. Rep., 718.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of theft of two hogs, and his punishment assessed at two years confinement in the State penitentiary.

There is but one question raised on appeal, and that is the sufficiency of the evidence to sustain a conviction. It is a case depending entirely on circumstantial evidence, and if asportation of the stolen property was necessary to sustain a conviction, it would undoubtedly be insuf-

ficient, for it is not shown that the hogs were removed from their accustomed range. Article 1331, Penal Code, provides, that to constitute "taking," in theft cases, it is not necessary that the property be removed any distance from the place of taking; it is sufficient that it has been in the possession of the thief. In Coward v. State, 24 Texas Crim. App., 590, it was specifically held that the marking and branding of an animal (without asporting it, or taking it from its accustomed range) for the purpose of appropriation, will evidence a fraudulent taking. The facts in that case are quite similar to the facts in this case, and the evidence was held sufficient. In that case, as in this, there was a changing of the marks on the animal, and it was held this could not have been accomplished without reducing the animal to possession. Judge White said: "We see no good reason, however, why a fraudulent taking of an animal may not be evidenced by an illegal marking and branding for the purpose of permanently appropriating it, since asportation is not necessary to constitute theft (Penal Code, art. 726), and since it is manifest that marking or branding can not be accomplished without an actual manual possession of the animal by the party engaged in it."

The proof shows that Banks Austin's mark was a smooth crop and a hole in one ear, and a crop with a split in the other ear; the marks on the hogs had been changed; the cropped ear had two splits in it instead of one and the other ear with a hole in it was cropped again. The changes showed to have been recently made, as they had not healed. Appellant's father gave the mark that the hogs had been changed to, according to the State's testimony, and appellant testified he had been in charge of his father's hogs for four years; his father was too old and feeble to look after such matter, and appellant always refers to the mark as his (appellant's) mark. Banks Austin positively identified the hogs as his hogs, and he went to see appellant when he found the hogs with the mark changed, and appellant claimed the hogs, and said they were in his mark. Appellant denied having this conversation with Austin, but admitted that the crop in one ear and two splits in the other was his father's mark, and he, appellant, had been and was looking after them, and they were in his control, and that he had been doing all the marking for his father for several years. On the question of intent the State proved this was not the first time appellant had marked another's hogs in his father's mark,—that he marked Tom Whisenhant's hog in that way, and had been compelled to straighten the matter up. Tom Whisenhant testifies that a short time before these hogs were found with their marks changed he heard some dogs barking down in the woods, and upon going down there he found appellant with a bunch of hogs, and upon asking him to whom the hogs belonged he said "mine" or "ours." That the listed sow and spotted sow Austin says belonged to him and had the marks changed were in the bunch of hogs that appellant then claimed.

Under such circumstances we can not say the jury, under a proper charge, was not authorized to find appellant guilty. The court re-

quired the jury to find beyond a reasonable doubt that the hogs belonged to Austin; that appellant had the intent to appropriate them to his own use and benefit, and further instructed that even though they find the hogs belonged to Austin, yet if appellant marked them through mistake, thinking they belonged to his father, they would acquit appellant. It is true no one testifies he saw appellant mark the hogs or change the marks, yet Whisenhant puts him in possession of them; the hogs when seen thereafter had their marks changed from Austin's mark to the mark claimed by appellant, and if they had not been found until the marks had healed, he doubtless could have recovered the hogs in a suit for their possession.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, JUDGE, not present at consultation.